FILED

2026 Feb-12  PM 04:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

|  |  |  |
|---|---|---|
| **CALVIN D. WELLS, JR.** | ) | |
| **Plaintiff,** | ) ) ) | **5:24-cv-354-EGL** |
| **v.** | ) | |
| **NATIONWIDE AGRIBUSINESS** | ) ) | |
| **INSURANCE COMPANY** | ) | |
| **Defendant.** | ) ) | |

## MEMORANDUM OPINION

Plaintiff Calvin Wells owns and operates a poultry farm, insured by Defendant Nationwide Agribusiness Insurance Company. On June 5, 2023, Wells filed a notice of loss with Nationwide, claiming that his property was damaged as the result of a recent storm. After investigating the claim and damage, Nationwide partially denied Wells's claim. Wells then filed an action in this Court, asserting two claims against Nationwide: Breach of Contract (Count I) and Bad Faith (Count II).

Nationwide has moved for summary judgment as to the bad faith claim. Doc. 21. Having considered the motions, the parties' briefs, and the evidentiary submissions, the Court finds that Nationwide's motion is due to be granted for the reasons given below.

## STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). A genuine dispute as to a material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). A fact is "material" if it could "affect the outcome" of the case. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1303 (11th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party can meet this burden by offering evidence showing no dispute of material fact or by showing that the non-moving party's evidence fails to prove an

essential element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). In reviewing the evidence submitted, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). In considering a motion for summary judgment, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## BACKGROUND

### A.    THE PROPERTY

Wells owns a poultry farm in Cullman, Alabama. Doc. 22 at 1. At the time of the claim, the property was insured by a Nationwide policy that covered damages from certain types of loss. Doc. 1 at ¶6. On March 3, 2023, a windstorm passed through Cullman. Doc. 22 at ¶3; Doc. 28 at 4 ¶3. Three months later, Wells filed a

notice of loss to Nationwide, reporting damage to two poultry houses[1] and a composter on the property. Doc. 22 at ¶3; Doc. 1 at ¶¶8-9. In his claim to Nationwide, Wells reported that all significant damage to the poultry houses and composter was caused by the March 2023 windstorm. Doc. 22 at ¶3.

### B. THE POLICY

The Nationwide policy covered "each 'dwelling' owned by [Wells] and for which Limit of insurance is shown in the declarations." Doc. 22 at ¶24. The broiler houses at issue (#5 and #6) were listed in the declarations and designated with a "BASIC Limit of Insurance." *Id.* A dwelling designated with BASIC limit is covered "for windstorm or hail, but not . . . snow or sleet." *Id.* The BROAD Limit of Insurance covers the "weight of ice, snow, or sleet causing damage to a building," and a SPECIAL designation covers "loss on account of general 'wear and tear.'" *Id.* Wells did not elect BROAD or SPECIAL for the poultry houses, and therefore the poultry houses were covered only by the BASIC limit, meaning they were not covered for snow; sleet; general wear and tear; or the weight of ice, snow, or sleet causing damage. *Id.* at ¶¶24-25.

---

[1] The damaged houses are referred to as "poultry houses," "chicken coops," and "broiler houses" throughout the complaint and motions.

## C.    CLAIM INVESTIGATION

After Wells filed his claim of loss, David Kaapro was assigned as the Nationwide claim adjustor. Doc. 22 at ¶5. Wells does not dispute that Kaapro has extensive experience in handling poultry farm and broiler house claims. *Id.*; Doc. 28 at 12 ¶5. Initially, Kaapro hired an independent adjuster to inspect the property. Doc. 22 at ¶5. In his report, the independent adjuster opined that the metal roofs on the poultry houses had been damaged by the windstorm but said that he could not fully inspect the trusses of the roofs to determine the extent or cause of the damage. Doc. 22 at ¶6; Doc. 28 at 13-14 ¶6.

After the independent adjustor said he could not do a full inspection, Kaapro contacted JS Held, and on August 8, 2023, Kelli Taylor, a professional engineer, inspected the poultry houses. Doc. 22 at ¶¶8-9; Doc. 28 at 14 ¶¶8-9. Around this same time, Wells's contractor, Wayne Barnette, performed an exploratory investigation and emailed pictures of the damage to Kaapro. Doc. 22 at ¶¶9-10; Doc. 28 at 14 ¶¶9-10. On August 30, 2023, Taylor submitted her report, concluding that the damage to the roof trusses was not caused by the windstorm. Doc. 22 at ¶¶11-15; Doc. 28 at 14-15 ¶¶11-15. The report included the following observations.

(1)    "[S]ome of the wood that was exposed underneath the detached connector plates on the trusses had similar coloration to the surrounding wood, which indicated that these areas had been exposed over a course of years as opposed to singular occurrence or event," and "many of the connector plates were significantly corroded and appeared to have been caked in mud." Doc. 22 at ¶11.

5

(2)     There was "an absence of buckling or detachment of metal braces on the upper portions of the supporting columns, as well as the lack of detachment of the lighter ceiling covering and insulation below the trusses, which was inconsistent with recent lateral displacement by wind." *Id.* at ¶12. Taylor reported that she "saw no evidence of any wind damage to the trusses." *Id.*

(3)     From her review of snow data, Taylor concluded that "a snow event approximately in February 2015 deposited approximately 11.5 inches of snow" at the property. *Id.* at ¶13. She concluded that "the significant weight from the snowfall compounded the compromise and failure of the trusses." *Id.*

(4)     Taylor reviewed aerial photographs from February 2022, before the windstorm, and concluded that these photos "showed sagging in the same areas of the roof observed" during her inspection. *Id.* at ¶14.

Wells disagrees with Taylor's interpretation of the snowfall and the aerial photographs, but he concedes that her report included the above information. Doc. 28 at 15 ¶¶13-14. In her report, Taylor concluded "that the claimed damage to the trusses in both poultry houses was not caused by wind," but that "the causative factor" of Wells's claimed damage "was not wind from a windstorm, but a progressive overloading of the trusses which, over the course of years, resulted in fracturing of the trusses and detachment of the metal plates." Doc. 22 at ¶15. Wells does not dispute that Taylor reached this conclusion and submitted it to Nationwide along with her extensive report. Doc. 28 at 15 ¶15. Based on this report, Kaapro advised Wells that it appeared coverage did not apply to the trusses and that Kaapro's conclusion would be reviewed by claims management. Doc. 22 at ¶¶16-17.

6

Kaapro informed Wells that Nationwide had "coverage questions regarding the Farmowner's policy" related to the "claim for wind loss" and invited Wells to provide "documentation … associated with the condition of the buildings prior to the reported date of loss, including, but [not] limited to, inspection reports from Tyson Foods." Doc. 21-5 at 237. In response, Wells sent: (1) an email from a contractor who had worked on the poultry houses; (2) a letter from Tyson Foods, who examined the property each year prior to signing a contract with Wells; and (3) a letter from Advanced Poultry Equipment & Supply, a company who had performed work on the poultry houses. Doc. 22 at ¶¶19-21; Doc. 28 at 15-16 ¶¶19-21.

All letters addressed "the condition of the buildings prior to the reported date of loss," and each party noted that they had not noticed significant damage in the years preceding the windstorm. Doc. 22 at ¶20. Specifically, Chris Carter, the local contractor and Tyson Foods employee, stated that he noticed a "sag" in one of the houses in May 2023 that he had not noticed in the past three years. Doc. 22 at ¶19; Doc. 28 at 15 ¶19. Tyson Foods stated that the houses' damaged trusses and other structural issues were not observed at the time of Wells's last contract signing. Doc. 22 at ¶21; Doc. 28 at 16 ¶21. Advanced Poultry Equipment and Supply wrote that none of its crew "reported noticing problems with poultry house trusses" when it performed work on the buildings in 2019. Doc. 22 at ¶21; Doc. 28 at 16 ¶21.

Over the next two months, Kaapro again invited Wells to submit additional documentation for Wells's assertion that the coverage should apply. Doc. 22 at ¶22; Doc. 28 at 16 ¶22. On December 12, 2023, Nationwide sent a partial denial to Wells, denying coverage for the roof trusses because "there [was] no damage from a covered cause of loss." Doc. 22 at ¶23. In its denial letter, Nationwide cited the report from J.S. Held to explain that the poultry house "exteriors [were] not wind damaged and the roof trusses show signs of long term corrosion, wear, tear, deterioration, weight of ice or snow, and improper workmanship and materials." *Id.*

## ANALYSIS

Nationwide has moved for summary judgment on Wells's claim for bad faith. Doc. 21; Doc. 1 at ¶¶17-22. Wells argues that Nationwide acted in bad faith in denying coverage for the roof trusses, Doc. 1 at ¶¶16-22, while Nationwide contends that, as a matter of law, it had a debatable reason to deny coverage. Nationwide based its denial on the report of a professional engineer, who opined that the damage was caused by the weight of snow and ice (non-covered), general wear and tear (non-covered), and not by the March 2023 windstorm (covered). Doc. 22 at 19. As the insured, Wells "'has a heavy burden of proof,' and 'the remedy [of bad faith] will be afforded in only extreme cases.'" *Snell v. United Specialty Ins. Co.*, 102 F.4th 1208, 1220 (11th Cir. 2024) (quoting *Blue Cross & Blue Shield of Ala. v. Granger*, 461 So. 2d 1320, 1325, 1329 (Ala. 1984)).

Wells advances both "abnormal" and "normal" variations of a bad faith claim. Doc. 28 at 20. In Alabama, bad faith is a "singular" tort with two different "methods" of proof—"normal" bad faith, also known as bad faith refusal to pay, and "abnormal" bad faith, also known as bad faith failure to investigate. *State Farm Fire & Cas. Co. v. Brechbill*, 144 So. 3d 248, 258 (Ala. 2013). To prove "normal" bad faith, a plaintiff must show that the insurer (1) breached an insurance contract, (2) refused to pay a claim, (3) had no arguable reason for refusing the pay, and (4) knew it had no arguable reason. *Id.* An "abnormal" bad faith claim requires a plaintiff to prove one additional element: "the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim." *Id.* at 257.

The distinction between "normal" and "abnormal" is not critical to this dispute because the Alabama Supreme Court made clear in *Brechbill* that in any bad faith claim, the plaintiff must prove the third element, the absence of a legitimate or arguable reason to deny the claim. *Id.* at 258. Therefore, "all bad-faith claims fail on summary judgment 'where the trial court … expressly [finds] as a matter of law that the insurer had a reasonably legitimate or arguable reason for refusing to pay the claim at the time the claim was denied.'" *Walker v. Life Ins. Co. of N. Am.*, 59 F.4th 1176, 1187 (11th Cir. 2023) (quoting *Brechbill*, 144 So. 3d at 260).

Under this standard, Nationwide cannot be liable for bad faith if it had a legitimate reason to deny coverage for the roof trusses of two poultry houses.

*Brechbill*, 144 So. 3d at 258. An adequate reason has been described as one that is "legitimate," "arguable," "debatable," or "lawful." *Id*. at 258-59. In assessing whether Nationwide had an arguable reason, the Court must look to the information before Nationwide *at the time* it denied the claim. *Nat'l Sec. Fire & Cas. Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982).

Nationwide hired Kelli Taylor of J.S. Held to conduct an in-depth inspection to determine the cause of the poultry houses' damage. Doc. 22 at ¶¶8-9. Wells does not dispute that Taylor inspected the houses and submitted an extensive report to Nationwide. Doc. 28 at 14 ¶¶9-11. Taylor concluded that the March 2023 windstorm did not cause the claimed damage to the trusses, but rather, the damage was the result of progressive overloading due to corrosion and snow accumulation from a 2015 storm. Doc. 22 at ¶15. The question is whether Taylor's report and conclusions provided an adequate, arguable reason for Nationwide to partially deny Wells's claim. It clearly did.

Nationwide was entitled to rely on a professional engineer's opinion that the damage to the roof trusses was caused by overall wear and tear, and not by a windstorm. *See Christian v. Country Mut. Ins. Co.*, No. 7:13-CV-27, 2014 WL 2434294, at *3 (N.D. Ala. May 29, 2014) (holding that an independent engineering report gave the insurer a debatable reason to deny the claim). Typically, an arguable reason exists when the insurer relies on independent experts and investigative

reports. *See, e.g.*, *Adams v. Auto-Owners Ins. Co.*, 655 So. 2d 969, 971-72 (Ala. 1995) (holding that the insurer had "reasonably arguable and legitimate reasons for denying [insured's] claim" based on "two on-site investigations conducted independently by an adjuster and an engineer"). This generalized rule is subject to exceptions. An insured can challenge an engineering report by questioning the credibility of the engineer or by showing that the investigator "manufactured" evidence to defeat the claim. *Id.* at 972. Further, a court could find that a report does not provide an arguable reason when the expert recommended additional tests that were not done,[2] or where an inexperienced adjustor did not obtain an engineer's evaluation.[3] These are non-exhaustive examples of evidence a plaintiff may submit to create a genuine issue of material fact as to the insurer's "debatable" reason.

Wells has not presented the Court with evidence to support a finding that Taylor's report did not provide an arguable reason for Nationwide's coverage determination. Each of his arguments amount only to a disagreement with her

---

[2] *See Atl. Specialty Ins. Co. v. Mr. Charlie Adventures, LLC*, 644 F. App'x 922, 927 (11th Cir. 2016). The plaintiff provided evidence to create a triable issue as to the insurer's arguable reason when he presented evidence that the expert informed the insurer that he had a "theory" and recommended that "additional testing be done on the engine parts to prove or disprove that theory." *Id.* There was a material issue of fact as to the arguable reason when the insurer did not complete the additional testing before denying the claim. *Id.*

[3] *See Lord v. Allstate Ins. Co.*, 47 F. Supp. 3d 1288, 1308-09 (N.D. Ala. 2014). When the insurer denied a claim, it relied on opinions from adjustors who "acknowledged that an engineer should inspect the house and offer an opinion." *Id.* at 1308. The "inexperienced opinion" of the adjustor "was not a *reasonably* legitimate or arguable basis for refusing" the claim. *Id.* at 1308-09. In stark contrast, here, when the independent adjustor could not form a full opinion as to the trusses, Nationwide hired a professional engineer to investigate the damage. Doc. 22 at ¶¶7-9.

conclusions, which does not create a genuine issue of material fact. His response is full of unsupported attacks on her report that hold no merit at this stage of litigation. He has presented no evidence to the Court to show that Taylor's report is "so obviously deficient, incomplete, or outweighed by conflicting evidence" that Nationwide's reliance on the report amounted to bad faith. *Walker*, 59 F.4th at 1188.

Wells first argues that Taylor's "report is not legitimate and does not give a 'reasonably legitimate' reason to deny the claim" because "current experts have opined that corrosion did not affect the integrity of the structure." Doc. 28 at 21. Even assuming this current expert opinion does in fact contradict Taylor's opinion, "[i]n assessing whether the insurer had an arguable reason for denying the claim, the court must look to the information before the insurer at the time it denied the claim." *First Baptist Church of Lillian v. Church Mut. Ins. Co.*, 645 F. Supp. 3d 1288, 1298 (S.D. Ala. 2022) (citing *Bowen*, 417 So. 2d at 183). This "current expert report" was not before Nationwide at the time it denied the claim and does not affect the Court's assessment of whether Nationwide had an arguable reason for its coverage decision. *See Walker*, 59 F.4th at 1188.

Wells also attacks Taylor's conclusions regarding the past snow event. He argues that "[a]s to the snow, that event simply did not occur as shown in the photograph taken in February of 2015 showing footprints leaving bare ground." Doc. 28 at 22, 26. He admits that Taylor relies on a legitimate picture and that the

photograph "shows snow on the ground;" he merely contends that this was "certainly not a snow event that reasonably damage[d] poultry house trusses." *Id.* at 26. All Wells has done is show that he disagrees with Taylor's interpretation. His interpretation of the photograph and of the damage from the snow event does not sufficiently undermine the credibility of Taylor's report. It is merely one conflicting opinion, which does not defeat Nationwide's arguable reason for denying coverage. *See Peterson v. State Farm Ins. Co.*, 707 F. Supp. 3d 1188, 1194 (N.D. Ala. 2023) ("The existence of conflicting professional opinions is strong evidence that an insurer had an arguable reason for its failure to pay.") (citation modified); *see also Walker*, 59 F.4th at 1188 ("But [the expert] report was unavailable to [the insurer] at the time of its decisions; even if the report had been available, the existence of another conflicting professional opinion would not have meant that [the insurer] lacked an arguable reason for deciding as it did under Alabama law.").

Wells remarks that "the record does not contain any evidence that Taylor considered or was supplied information that the Subject Poultry Houses were not damaged following the snow event and before the Subject wind event." Doc. 28 at 25. While Wells does not accompany this remark with any argument against the validity of Taylor's report, the Court assumes he is arguing that her report is unreliable because it did not address the evidence presented to Nationwide regarding the condition of the poultry houses from 2015 to 2023. The undisputed facts show

13

that Taylor completed her investigation and report prior to Wells's submission of the letters from Tyson Foods and Advanced Poultry.[4] Taylor did not fail to consider relevant information because the relevant information had not yet been submitted to Nationwide. Wells has therefore not challenged the report's credibility on these grounds.

Finally, Wells argues that Taylor "manufactured" evidence based on her interpretation of the photographs of connector plates and the satellite photographs allegedly showing sags in the roof. Doc. 28 at 28. He does not argue that Taylor *created* or *edited* these pictures in any way. He merely argues that her interpretation of the photos is questionable. This is not a claim of "manufactured" evidence. This is merely Wells's differing opinion, and is not evidence sufficient to create a genuine dispute of material fact.

Throughout his response, Wells alleges that Taylor's report is "sham," "unreliable," and "proposed a preposterous theory," but he has not presented evidence to back up his claims. Even viewing the evidence in the light most favorable to Wells, Nationwide's investigation—which included the report of an independent engineer—established an arguable reason for denying the claim,

---

[4] Taylor completed her investigation on August 8, 2023, and submitted her report on August 30, 2023. Doc. 22 at ¶¶9, 11. Wells submitted Chris Carter's email on September 16, 2023. Doc. 21-6 at 46. The letter from Tyson Foods was written on October 9, 2023. Doc. 21-2 at 15. The date of the Advanced Poultry Letter is not clearly provided but it is recorded by Kaapro on November 9, 2023. *Id.* at 15-16.

namely that wear and tear and the weight of ice and snow, not wind, caused the damage. And under Alabama law, "'[i]f any one reason for denial of coverage is at least "arguable," [a] court need not look any further,' and a claim for bad faith refusal to pay will not lie." *Weaver v. Allstate Ins. Co.*, 574 So. 2d 771, 774 (Ala. 1990) (quoting *McLaughlin v. Ala. Farm Bureau Mut. Cas. Ins. Co.*, 437 So. 2d 86, 91 (Ala. 1983)). While Wells clearly disagrees with the denial, he failed to establish a genuine dispute as to the existence of this arguable reason, and thus his bad faith claim fails.

Wells's response contains multiple references to a "reckless investigation," and "failure to apply cognitive review." Doc. 28 at 19, 21-22, 25. These arguments go to the conditional fifth element of a bad faith claim, which is immaterial here.[5] Wells was unable to establish the third element of his claim for bad faith, and "regardless of the imperfections" of Nationwide's investigation, "the existence of a debatable reason for denying the claim" defeats both a bad faith failure to pay and a bad faith failure to investigate claim. *Brechbill*, 144 So. 3d at 259 (quoting *Weaver*, 574 So. 2d at 775). No bad faith claim can survive "where the trial court has expressly found as a matter of law that the insurer had a reasonably legitimate or

---

[5] To prove abnormal bad faith, a plaintiff must prove "the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim." *Brechbill*, 144 So. 3d at 257 (quoting *Bowen*, 417 So. 2d at 183). A plaintiff can prove this element in a couple ways, including by showing that an insurer recklessly failed to investigate or recklessly failed to apply a cognitive review. *Nat'l Ins. Ass'n v. Sockwell*, 829 So. 2d 111, 129-30 (Ala. 2002).

arguable reason for refusing the pay the claim at the time the claim was denied." *Id.* at 260. As the Court has so found, Wells cannot avoid summary judgment on the bad faith claim by claiming that Nationwide's investigation was "reckless."

There is no genuine issue of material fact as to whether Nationwide had an arguable reason for denying Wells's claim. Nationwide based its denial on a comprehensive engineering report completed by an independent engineer after an extensive investigation. It is reasonable to rely on an engineer who closely examined the structure and concluded, based on multiple factors, that wear-and-tear had caused the trusses to fail before the windstorm in question.

Whether Nationwide's ultimate decision was correct remains to be decided. But based on the record before the Court, as a matter of law, Nationwide had an arguable reason to partially deny Wells's claim and thus his bad faith claim fails.

## CONCLUSION

For the reasons discussed above, the Court will **GRANT** Nationwide's Motion for Summary Judgment (Doc. 21) as to Count II (Bad Faith).

**DONE** and **ORDERED** this 12th day of February, 2026.

**EDMUND G. LACOUR JR.**
UNITED STATES DISTRICT JUDGE